483 S.E.2d 852

STATE of West Virginia
ex rel. GEORGE B.
W., Petitioner,

v.

Honorable Tod J. KAUFMAN, Judge of
the Circuit Court of Kanawha County,
and Sharon B. W., Respondents.

No. 23927.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 15, 1997.

Decided March 3, 1997.

Michael T. Clifford, Clifford, Mann & Swisher, James T. Cooper, Lovett, Cooper & Glass, Charleston, for George B. W.

Thomas J. Gillooly, Charleston, Parrish McKittrick, St. Albans, for Sharon B. W.

Beverly S. Selby, Charleston, Guardian Ad Litem.

WORKMAN, Justice:

In this petition for a writ of prohibition and emergency stay of an order of the Circuit Court of Kanawha County, we grant the writ as moulded and direct that a hearing be held within ten days on the issues of visitation and whether additional examinations should be conducted on the subject child.[1]

## I. Factual Background

Subsequent to the Respondent Sharon B. W.'s (hereinafter "Respondent"), August 1995 petition for divorce from Petitioner George B.W. (hereinafter "Petitioner"), temporary custody of the parties' only child, four-year-old Ben W. (hereinafter "the child"), was granted to the Respondent. During visitation with the Petitioner in the summer of 1996, the child allegedly accused his mother's boyfriend of sexual abuse,[2] and the Petitioner immediately retained the services of Dr. Timothy Freeman.[3] Dr. Freeman interviewed the child and summarized the allegations of abuse in a document which was presented to the lower court on August 16, 1996. The Petitioner requested an emergency order relieving him of the obligation to return the child to the Respondent, and based upon the allegations of sexual abuse, the lower court entered an emergency order providing that the Petitioner should temporarily retain custody of the child.[4] On August 19, 1996, Dr. Freeman wrote to the Respondent's attorney, informing him of Dr. Freeman's recommendation that the child should not be in the company of his mother until "a point in ... [his] therapy warrants his ability to sustain such visit without psychological discomfort."

Both parties thereafter moved for the appointment of a guardian ad litem for the child, and the matter was assigned to Family Law Master Charles Phalen, Jr. During a September 11, 1996, hearing, the family law master and the parties' attorneys discussed issues of the appointment of a guardian ad litem, the arrangements for psychiatric examination of the parents and the child, and the equitable distribution and alimony issues which had been pending prior to the allegations of sexual abuse. The only testimony taken was from the Petitioner and the Re-

---

1. The hearing shall be held before Judge Tod Kaufman of the Circuit Court of Kanawha County within ten days of the filing date of this opinion, unless otherwise agreed upon by counsel for the parties and the guardian ad litem for the child.

2. The child allegedly indicated to his father that, while residing in Tennessee with his mother, her boyfriend, and the boyfriend's eleven-year-old daughter, the following activities occurred: the boyfriend masturbated in front of the child; the boyfriend placed his hand in the child's pocket and touched the child's penis; the boyfriend's penis was called a "whip" because the child would be whipped with it as it became larger; the boyfriend would pinch the child's penis; and "white stuff" would come out of the boyfriend's penis. These activities allegedly occurred in the presence of the child's mother. In the mother's response to the petition for writ of prohibition, she denies she ever sexually abused the child or permitted such abuse, and denies that she ever resided with the man in question, who she characterizes as a "former boyfriend."

3. Dr. Freeman is a Ph.D. child clinical psychologist practicing with Process Strategies Institute in Charleston, West Virginia.

4. A criminal investigation was apparently instituted in Memphis, Tennessee, the location of the alleged abuse. That investigation has been closed without the filing of charges.

spondent for the purpose of establishing the jurisdictional information sufficient to grant a divorce. Subsequent to that hearing, the family law master directed as follows:

Both parties and the minor child shall be made available for evaluation by an expert or experts concerning issues of custody, visitation, and allegations of sexual abuse. The parties may select their own experts, or they may jointly select one expert, for purposes of evaluation. Any session with the parties or the minor child conducted as part of such evaluation shall be audio and video taped. The professional conducting the evaluation may elect to have present at any session such other persons, including but not limited to the parties and the minor child, as the professional may consider appropriate for purposes of the evaluation process.

Pursuant to the discussions between the parties' attorneys and the family law master during the September 11, 1996, hearing, attorney Beverly Selby was appointed as guardian ad litem for the child by order dated September 19, 1996. In her interim report dated September 26, 1996, Ms. Selby discussed the child's fear of his mother and discomfort with the thought of seeing her. Ms. Selby also indicated that she had spoken with Katheryne Smith of Directional Analysis, Incorporated, regarding her willingness to supervise the visitation.

By letter dated October 3, 1996, Dr. Freeman informed Family Law Master Phalen of the deleterious effects of supervised visitation or even telephone contact with the mother upon the child's therapy regarding the sexual abuse. Dr. Freeman's letter also addressed the child's opposition to any telephone or personal contact. By letter dated

November 6, 1996, guardian ad litem Beverly Selby apprised family law master Phalen of her position that telephone calls with the Respondent, even if supervised, were not in the best interests of the child. Her conclusions in this regard were apparently premised upon Dr. Freeman's recommendation and the wishes of the child.

On November 7, 1996, Family Law Master Phalen ordered Directional Analysis, the neutral expert suggested by the guardian ad litem, to facilitate supervised telephone visitation between the child and the Respondent. By letter to Family Law Master Phalen dated November 18, 1996, Katheryne Smith of Directional Analysis expressed her concern that supervised visitation may be harmful to the child at this stage and requested additional time to investigate the case.

On December 15, 1996, the Respondent appeared at a Charleston restaurant at which the child and the Petitioner were dining. The Respondent allegedly began yelling the child's name and creating a disturbance before the Petitioner was able to remove the child from the restaurant. On December 16, 1996, the Respondent filed a motion in the lower court to compel the Petitioner to present the child for a psychological evaluation by Dr. Richard Gardner, a clinical child psychiatrist from New York, in which the mother would potentially be present, at the discretion of Dr. Gardner.[5] The lower court granted that motion by order entered on December 18, 1996, without a hearing or consultation with the guardian ad litem, the family law master, or the court-assigned supervisor, Ms. Smith of Directional Analysis.[6] The lower court stated that the family law master had unequivocally expressed his position on

---

**5.** The philosophies espoused by Dr. Gardner have apparently been the subject of some debate. In an article entitled, "Gardner's Law; A Controversial Psychiatrist and Influential Witness Leads the Backlash Against Child Sex Abuse 'Hysteria,'" the author discussed Dr. Gardner's frequent appearance as an expert witness and media commentator representing the view that the United States is in a state of child-abuse hysteria. The article referenced Dr. Gardner's "Parental Alienation Syndrome," holding that some parents, afraid of losing custody, actively disparage the other parent and indoctrinate the child that abuse has occurred. Critics maintain that there

is scant empirical evidence supporting many of Dr. Gardner's theories. *See* Rorie Sherman, *"Gardner's Law; A Controversial Psychiatrist and Influential Witness Leads the Backlash Against Child Sex Abuse 'Hysteria,'"* Nat'l L. J., August 16, 1993 at 1.

**6.** With no inquiry regarding her availability, Judge Kaufman's order directed that Ms. Smith be involved with visitation on specified dates. Ms. Smith's schedule, however, would not permit her to assist with visitation on the dates selected by the circuit court.

the issues. The Petitioner was given one of three days in December 1996 to produce the child for evaluation by Dr. Gardner.

By letter dated December 19, 1996, Dr. Freeman informed the lower court of the potential harm to the child from being subjected to another interview and recitation of the details of the sexual abuse. Ms. Smith also advised the lower court, by letter dated December 19, 1996, of her concerns regarding the appropriateness of evaluation and/or visitation.

The Petitioner contends that the lower court's entry of the order requiring evaluation constitutes an abuse of discretion and seeks a writ of prohibition against the lower court, an order requiring a hearing on the matter, and such other relief as may be required. Pursuant to Rule 14(b) of the West Virginia Rules of Appellate Procedure,[7] the proceedings below were automatically stayed upon this Court's issuance of a rule to show cause on December 20, 1996.

## II. Change of Custody

■ It appears from the record that the lower court, by order dated August 16, 1996, entered an ex parte emergency order which temporarily altered the custody arrangements based on the document prepared by Dr. Freeman. It is of concern that no petition for modification and no hearing on that issue was held or apparently even scheduled. Although a court may enter an emergency order transferring custody where there are allegations of abuse or neglect without notice and full hearing if the court deems such an order necessary for the immediate protection of the child(ren), such order should be of limited duration, should set a prompt and full hearing on the allegations, and should apprise both parties of the scope of the hearing. In the event such emergency change is found to be warranted, the court should immediately appoint a guardian ad litem for the child.

## III. Criteria for Awarding a Writ of Prohibition

■ In syllabus point one of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979),

we addressed the appropriate use of a writ of prohibition, and observed:

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*Id.* at 112, 262 S.E.2d at 745.

## IV. Visitation

■ The right to contact by a parent with his or her child is an important one, not easily removed. Certainly, a non-offending parent has a clear right to custody or visitation with his or her child. As we explained in syllabus point two of *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975), and have consistently maintained,

"A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts."

*Id.* at 343, 211 S.E.2d at 119 (quoting Syllabus, *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 168 S.E.2d 798 (1969)). Even where there are allegations of abuse and/or neglect, parents whose rights have not been terminated generally have a right to continued contact with the child, although such

---

7. Rule 14(b) provides, in pertinent part, that "[u]nless otherwise provided, the issuance of a rule to show cause in prohibition stays all further proceedings in the underlying action for which an award of a writ of prohibition is sought."

visitation may be supervised for the protection of the child.[8]

In syllabus point five of *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996), for instance, we explained: "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." *Id.* at 241, 470 S.E.2d at 195. We emphasized that "[t]he best interests of the children should determine the pace of any visitation modification to assure that the children's emotional and physical well being is not harmed." 196 W.Va. at 246, 470 S.E.2d at 200. In syllabus point three of *Carter*, we reasoned:

> Because of the extraordinary nature of supervised visitation, such visitation should be ordered when necessary to protect the best interests of the children. In determining the best interests of the children when there are allegations of sexual or child abuse, the circuit court should weigh the risk of harm of supervised visitation or the deprivation of any visitation to the parent who allegedly committed the abuse if the allegations are false against the risk of harm of unsupervised visitation to the child if the allegations are true.

196 W.Va. at 241, 470 S.E.2d at 195.

We have also held that the nature of supervision must be designed for the child's protection, both physical and emotional. In *Mary D. v. Watt*, 190 W.Va. 341, 438 S.E.2d 521 (1992), we encountered a situation in which the allegedly abusive father had been tried on charges of sexual abuse and acquitted. We noted, however, that "being found 'not guilty' under the criminal standard of 'beyond a reasonable doubt' will not necessarily ease the emotional and psychological trauma, if any, suffered by the children if visitation, even if supervised, were to continue." 190 W.Va. at 347, 438 S.E.2d at 527. Chief Justice McHugh enumerated specific guidelines for the development of a safe and secure atmosphere in which supervised visitation, where appropriate, may be exercised.

> Where supervised visitation is ordered pursuant to *W. Va.Code*, 48–2–15(b)(1) [1991], the best interests of a child include determining that the child is safe from the fear of emotional and psychological trauma which he or she may experience. The person(s) appointed to supervise the visitation should have had some prior contact with the child so that the child is sufficiently familiar with and trusting of that person in order for the child to have secure feelings and so that the visitation is not harmful to his or her emotional well being. Such a determination should be incorporated as a finding of the family law master or circuit court.

Syl. Pt. 3, 190 W.Va. at 343, 438 S.E.2d at 523. In syllabus point two of *Mary D.*, we addressed the circumstances under which a circuit court could consider an award of visitation rights to an alleged sexual offender:

> Prior to ordering supervised visitation pursuant to *W.Va.Code*, 48–2–15(b)(1) [1991], **if there is an allegation involving whether one of the parents sexually abused the child involved, a family law master or circuit court must make a finding with respect to whether that parent sexually abused the child.** A finding that sexual abuse has occurred must be supported by credible evidence. The family law master or circuit court may condition such supervised visitation upon the offending parent seeking treatment. **Prior to ordering supervised visitation, the family law master or circuit court should weigh the risk of harm of such visitation or the deprivation of any visitation to the parent who allegedly committed the sexual abuse against the risk of harm of such visitation to the child.** Furthermore, the family law master or circuit court should ascertain that the allegation of sexual abuse under these circum-

---

8. We have acknowledged a child's right to continued association with those with whom he has formed an emotional bond, *In re Danielle T.*, 195 W.Va. 530, 466 S.E.2d 189 (1995); *In re Christina L.*, 194 W.Va. 446, 460, S.E.2d 692 (1995); *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991); *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989), and have recognized that even where there is a termination of parental rights, a child may under some circumstances still have a right to continued contact with a parent whose rights have been terminated. *See In re Christina L.*, 194 W.Va. at 454, 460 S.E.2d at 700.

stances is meritorious and if made in the context of the family law proceeding, that such allegation is reported to the appropriate law enforcement agency or prosecutor for the county in which the alleged sexual abuse took place. Finally, if the sexual abuse allegations were previously tried in a criminal case, then the transcript of the criminal case may be utilized to determine whether credible evidence exists to support the allegations. If the transcript is utilized to determine that credible evidence does or does not exist, the transcript must be made a part of the record in the civil proceeding so that this Court, where appropriate, may adequately review the civil record to conclude whether the lower court abused its discretion

190 W.Va. at 342–43, 438 S.E.2d at 522–23 (emphasis supplied).

We recognized in *Mary Ann P. v. William R.P., Jr.,* 197 W.Va. 1, 475 S.E.2d 1 (1996), that under some circumstances visitation could be totally suspended, at least until the family underwent therapy. In *Mary Ann P.,* we determined that the record before us was "clear that forced visitation at this time would be detrimental to the children and futile on the defendant's behalf without professional intervention." 197 W.Va. at 8, 475 S.E.2d at 8; *see also Ledsome v. Ledsome,* 171 W.Va. 602, 301 S.E.2d 475 (1983); *Lufft v. Lufft,* 188 W.Va. 339, 343, 424 S.E.2d 266, 270 (1992) (explaining that the right to visitation is determined by considering the child's welfare). In *Mary Ann P.,* we also clothed the circuit court with the responsibility of determining when supervised visitation should resume and to "set forth a specific visitation schedule that takes into account the best interest of the children and the defendant's interest in attaining a close relationship with his sons." 197 W.Va. at 8, 475 S.E.2d at 8 (citing *Weber v. Weber,* 193 W.Va. 551, 457 S.E.2d 488 (1995); W. Va.Code, 48–2–15(b)(1993)). We also ordered the circuit court to determine whether the parties could agree on counseling or therapy for the children and their father. If no agreement could be reached, we instructed the lower court to "take any additional evidence needed and direct the participation in such counseling as a condition of the continuation of the plan for restoring visitation." *Mary Ann P.,* 197 W.Va. at 8, 475 S.E.2d at 8.

As recognized in the concurrence to *Mary Ann P.,* "[w]hen ... there is credible evidence of sexual abuse, the risk of harm to the child weighs heavily in this balance, and courts should err on the side of caution if necessary to protect children at risk of possible abuse." 197 W. Va. at 10, 475 S.E.2d at 10. We emphasized in *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991):

> In the difficult balance which must be fashioned between the rights of the parent and the welfare of the child, we have consistently emphasized that the paramount and controlling factor must be the child's welfare. "[A]ll parental rights in child custody matters," we have stressed, "are subordinate to the interests of the innocent child." *David M. [v. Margaret M.],* [182 W.Va. 57, 60,] 385 S.E.2d [912] at 916 [ (1989) ].

185 W.Va. at 629, 408 S.E.2d at 381.

Commentators on the issue of appropriate limitation or termination of visitation have recognized that: "Sexual abuse of a child by a parent or by others while the child is under the parent's care or control may result in termination or restriction of visitation rights. In some circumstances, the court will terminate or deny visitation entirely." John P. McCahey et al., *Child Custody & Visitation Law and Practice* § 16.10[1] (1996).

It is a rare instance in which a parent should be denied all contact with a child. An essential element of our cases involving allegations of abuse by a parent is the necessity for the family law master or circuit court to hold hearings to ascertain the most viable approach to the resolution of the difficult issues which will inevitably be inherent in such matters. In the instant case, it is of great concern that no hearings were held on the sexual abuse or the visitation issues. It is also of great concern that a parent's right to *all* contact with a very young child was extinguished without any meaningful hearing on the issue.

 The Petitioner suggests the child has been abused and that his mother, at a

minimum, failed to protect him. The Respondent suggests that the Petitioner has manipulated the child into creating the sexual abuse allegations in order to accomplish this result, and suggests that the extinguishment of all communications with the mother allows total manipulation of this very young child. Whether any of these allegations have merit, we do not know. We do know, however, that these issues certainly merit prompt and *full* hearing below and not the entry of orders upon mere allegations.

## V. Additional Evaluation of the Child

In *State v. Delaney,* 187 W.Va. 212, 417 S.E.2d 903 (1992), we were confronted with the issue of multiple physical and psychological evaluations for seven- and eight-year-old victims. 187 W.Va. at 215–17, 417 S.E.2d at 906–08. In syllabus point three of that opinion, we enumerated the following factors for consideration:

In order for a trial court to determine whether to grant a party's request for additional physical or psychological examinations, the requesting party must present the judge with evidence that he has a compelling need or reason for the additional examinations. In making the determination, the judge should consider: (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

187 W.Va. at 213, 417 S.E.2d at 904.

Presented with a request for additional evaluation, the lower court in *Delaney* had concluded that additional inquiries were not necessary. 187 W.Va. at 216, 417 S.E.2d at 907. We agreed with the lower court's determination, reasoning that "[g]iven the effect of a probing mental interrogation on children of their tender years, ... the probative value to the appellant was outweighed by the trauma and intrusiveness to the victims.... Since we cannot find that the ap-

pellant's need is greater or more compelling than the burden it would impose on the victims, the trial court did not abuse its discretion in denying the appellant's request." *Id.* at 217, 417 S.E.2d at 908 (footnote omitted); *see also State v. Miller,* 195 W.Va. 656, 466 S.E.2d 507 (1995).

In a criminal context, West Virginia Code § 61–8B–14 (1992) dictates that "the court may provide by rule for reasonable limits on the number of interviews to which a victim who is a child who is eleven years old or less must submit for law enforcement or discovery purposes." In *Burdette v. Lobban,* 174 W.Va. 120, 323 S.E.2d 601 (1984), we recognized the necessity of providing protection for the child victim:

A parent accused of sexual abuse by his minor child has a constitutional right to know of what his child accuses him in order to prepare his defense. But certainly the child victim has a concurrent right to be protected against unrestrained private examination by adverse interests. Child victims of sexual abuse doubtless have undergone a horrifying experience.

174 W.Va. at 121–22, 323 S.E.2d at 603; *see generally,* Alison R. McBurney, Note, *Bitter Battles: The Use of Psychological Evaluations in Child Custody Disputes in West Virginia,* 97 W. Va. L.Rev. 773 (1995).

With regard to the civil context, Rule 35(a) of the West Virginia Rules of Civil Procedure provides as follows:

(a) *Order for Examination.*—When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or other qualified expert or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

W. Va. R. Civ. P. 35(a). While *Delaney* was decided in the context of a criminal investiga-

tion of alleged abuse, the principles regarding additional evaluations of the victim are equally applicable in the civil context.

Based upon the foregoing, the writ of prohibition is granted as moulded with respect to the issue of the additional evaluation, and this case is remanded to the Circuit Court of Kanawha County for further proceedings on the issues of modification of custody; supervised visitation, if merited; and expert evaluation of the child. The exploration of the expert evaluation issue ·on remand must include consideration of the factors enumerated in *Delaney,* and any order entered in connection with this matter should include findings of fact and conclusions of law in relation thereto. It appears that the lower court attempted to afford the Respondent mother visitation and contact in a manner that would protect the child from actual harm. The chief shortcoming of the supervised visitation order is that it was entered without benefit of a hearing, both as to whether it provided adequate contact for the parent and child to sustain a relationship and whether the child was adequately protected from emotional harm. The court should hold a full hearing on the visitation issue within ten days unless otherwise agreed upon by the parties, and the court should fashion a plan for temporary visitation and for custody.

Writ granted as moulded.