710 S.E.2d 526

**Dawn Renee PALMER (Now Lacy), Petitioner Below, Appellee**

v.

**Mickey JUSTICE, Respondent Below, Appellant.**

No. 35633.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 2011.

Decided May 4, 2011.

Christopher T. Pritt, Pritt & Pritt, Charleston, WV, for the Appellant.

Travis A. Griffith, Charleston, WV, Guardian Ad Litem.

Dawn R. Palmer, pro se, Appellee.

McHUGH, J.:

This is an appeal of an order entered January 26, 2010, in the Circuit Court of Kanawha County, which affirmed a family court order denying Appellant Mickey Justice's Petition for Modification of a parenting plan involving his special needs son. At issue is whether certain orders of the family court were so vague as to the requirements necessary for a modification that it was impossible for Appellant to satisfy the burden of proving that the requested modification was warranted, in violation of Appellant's constitutional right of due process.

Upon careful consideration of the arguments of the parties and the applicable legal authority, and for the reasons discussed below, we reverse the order of the circuit court and remand this matter for further proceedings.

I. Factual and Procedural Background

Appellant and Appellee Dawn Renee Palmer (now Lacy) were involved in a relationship

that produced a child. The couple never married and parted ways during Appellee's pregnancy. The baby, referred to herein as L.S.[1], was born twenty-five weeks prematurely on July 2, 2005. As a result of his premature birth, L.S. suffers from neurological and other health problems and is characterized as "special needs."

On or about September 9, 2005, Appellant was served with a Complaint to Establish Paternity, Child Support and Retroactive Support[2] filed by the West Virginia Department of Health and Human Resources and Appellee. Thereafter, on October 17, 2005, Appellant filed an Answer and Counter Petition in which he admitted his paternity and alleged Appellee has repeatedly denied him visitation, thereby "disrupting the formation of [Appellant's] ability [sic] to bond with the child."[3] Appellant also asserted his custodial rights as a father.

Additionally, Appellant filed the first of several proposed parenting plans in the Family Court of Kanawha County in which he requested regular and enforceable parenting time with his son. Following a May 4, 2006, hearing, an Agreed Order was entered on May 15, 2006, indicating that the parties agreed that Appellant "would take training classes offered by West Virginia Birth to Three on proper care of this special needs child[,]" and that during the pendency of the classes, Appellant would have visitation with

L.S. at Appellee's home every other Saturday for four hours. The order further provided that the parties agreed that once Appellant "has concluded said classes with West Virginia Birth to Three, the parties would work to establish a parenting plan and will discuss including a provision which would allow [Appellant] to take [L.S.] ... to his home for overnight visits."[4] Indeed, it is Appellant's unrelenting desire to have overnight visitation with his son that underlies the instant appeal.

On July 6, 2007, Appellant filed a Petition for Contempt, indicating that he "attempted to receive training classes from Birth to Three but was advised by Birth to Three that it did not offer training classes outside the child's home."[5] Appellant alleged that after he sought and subsequently completed healthcare classes elsewhere, he "made many attempts to negotiate more parenting time with his son" but Appellee refused to allow any additional visitation.

The parties subsequently reached a temporary agreement and, following a hearing on August 20, 2007, the family court entered an order on October 1, 2007, which specifically expanded Appellant's unsupervised parenting time by approximately eight hours each month. It was further ordered, *inter alia,* that Appellant

1. It is this Court's customary practice in cases involving minors to refer to them by their initials rather than by their given names. *See In re Jeffrey R.L.,* 190 W.Va. 24, 26 n. 1, 435 S.E.2d 162, 164 n. 1 (1993).

2. The issue of child support was subsequently resolved and fully addressed in an order not at issue in this appeal.

3. More specifically, Appellant alleged that Appellee concealed the fact of his paternity by denying to Appellant that he is the father; by refusing to identify Appellant as the father on the child's birth certificate; and by giving the child a surname that is different from either biological parent. Genetic testing ultimately determined that Appellant is the child's father. We note that because Appellant did not request that such testing be conducted and because he previously admitted that he was L.S.'s father in his Answer and Counter Petition to the complaint, the court determined it would be inequitable to order Appellant to bear the cost of testing.

4. A subsequent order entered January 8, 2007, referenced the May 4, 2006, hearing and was substantively identical to the prior Agreed Order entered May 15, 2006. It is unclear from the record why the January 8, 2007, order was entered.

5. Attached to Appellant's Petition for Contempt was a letter from Robin Snyder Halstead, Birth to Three Coordinator, dated March 5, 2007, stating that Birth to Three "does not offer parenting classes" and explaining that its philosophy "is to educate and train the parents and caregivers in the 'natural environment,' being the child's home." Though the letter further explained that "[w]e go into the child's home and do therapy, along with that, we show the parents what to do and what to work on until our next home visit[,]" it gave no specific information about L.S.'s particular therapy or the specific training his parents or care givers receive.

"will participate in as many therapy sessions as possible and shall give reasonable notice to [Appellee] of the therapy sessions he will attend.[6] ... Following three (3) months of the [Appellant's] participation in the therapy sessions as set forth above, [Birth to Three Coordinator] Robin Halstead shall invoke the services of a licensed social worker to inspect the [Appellant's] home to assure that it is suitable for the minor child, given the child's special needs. Thereafter, the therapy sessions shall be conducted one-half in the [Appellee's] home and one-half in the [Appellant's] home.

(Footnote added)

On January 13, 2009, Appellant again sought to modify the parenting plan, requesting, *inter alia*, overnight visits in his home every other weekend. According to the record, on February 13, 2009, Appellant also filed with the court a letter dated November 27, 2007, from the Birth to Three program, which indicated that Appellant participated in six "therapy/intervention sessions" with L.S. and Appellee and that Appellant participated in the annual treatment planning meeting on October 9, 2007.[7] The letter further indicated that Appellant was present during two out of six individual home visits with Appellee for "service coordination needs."[8]

Appellant also filed with the family court a Social Work Assessment completed on November 16, 2007, by Evangeline Reed, a licensed social worker with Birth to Three. The assessment was conducted in Appellant's home and included an interview of Appellant and an inspection of his home for safety in light of L.S.'s disabilities. The assessment was favorable overall and also indicated that Appellant accepted suggestions for minor adjustments to the home to ensure L.S.'s safety.

Appellee opposed Appellant's petition to modify the parenting plan, arguing that Appellant "has failed to attend the appropriate number of therapy sessions" and that he should be ordered to do so to ensure that he is "sufficiently prepared to spend parenting time" with L.S.

In an order entered February 23, 2009, the family court denied Appellant's petition to modify the parenting plan. The court found, *inter alia*, that due to Appellant's work schedule,[9] Appellant "admitted that his attendance at the therapy sessions scheduled by the West Virginia Birth to Three program was sporadic." The court concluded that "as a result of the [Appellant's] failure to attend the requisite therapy sessions with the infant child of the parties, the [Appellant] is in need of additional therapy/counseling sessions with a professional provider thereof in order to properly educate the [Appellant] in the appropriate care for the special needs child." It was ordered that Appellant be granted leave to file a subsequent petition to modify after he has

"successfully completed the appropriate number of therapy/counseling sessions with the professional care givers for [L.S.] at the Children's Therapy Clinic and the physical therapy center. The [Appellant] shall document his attendance and successful completion of said therapy/counsel sessions by providing the Court with written documentation from the professional service providers for the benefit of [L.S.]."

On July 20, 2009, after attending two occupational therapy, three physical therapy and three vision therapy sessions, Appellant filed another Petition for Modification. Appellant's petition stated that in addition to the above, he hoped to attend more therapy sessions when his schedule allows. Appellant's

---

**6.** For clarification, it appears that the "therapy sessions" to which the family court refers are those conducted by Birth to Three in the Appellee's home and where L.S. resides. As previously noted, the child's parents are trained while the child is receiving therapy. *See* n. 5, *supra*.

**7.** The November 27, 2007, letter was apparently written by someone affiliated with the Birth to Three program. Though it was unsigned, a contact telephone number was included in the letter.

**8.** The November 27, 2007, letter from Birth to Three also noted that Appellant "has not been present or participated in intervention services with our development specialist or vision specialist."

**9.** At the time, Appellant was required to frequently travel out of town with his job. On appeal, he asserts that this is no longer the case.

petition was denied by order of August 17, 2009, because the family court determined he had "failed to provide to the Court with [sic] verifiable documentation of his completion of attendance and successful completion of therapy/counseling sessions from the provider as required by the Order entered on February 23, 2009."

On September 1, 2009, Appellant attempted to comply with the court's August 17, 2009, order by submitting documentation showing that he attended the various therapy sessions previously described. Specifically, along with yet another petition to modify the parenting plan, Appellant included a note from Amie Cook–Smith, Teacher of the Visually Impaired and Parent Advisor, indicating Appellant "attended a total of three INSITE Home Visits provided by a Parent Advisor from the WV School for the Blind during the months of March and April"; a letter dated August 13, 2009, from Valicia Leary, Executive Director of the Children's Therapy Clinic, confirming that Appellant "attended therapy sessions on April 2, 2009 and April 9, 2009 for [L.S.] ... at Children's Therapy Clinic" [10]; and a letter from Kellie J. Blanchard, a physical therapist at Professional Therapy Services, Inc., indicating L.S. has been attending physical therapy sessions at that facility since August 2008 and that Appellant attended sessions on March 30, 2009, April 6, 2009, and April 27, 2009.

In an order entered September 1, 2009, the family court determined that Appellant "has met the statutory requirements of a significant change of circumstances necessary to warrant a modification in this matter[,] [11]" and granted Appellant's petition for modification. The court's order did not include any findings of fact or conclusions of law and the matter was set for hearing.

Meanwhile, on or about September 2, 2009, the family court appointed a guardian *ad litem* for L.S., specifically directing him to interview the parties and the child; to prepare a proposed allocation of custodial responsibility and parental time that would serve the best interests of the child; to "contact and obtain any and all pertinent medical/mental treatment records of the parties and the minor child"; and to determine the parties' fitness and assess the suitability of their home environments.

In the Evaluation and Recommendation of Guardian *Ad Litem* for the Child (hereinafter "report") filed on or before October 8, 2009, the guardian *ad litem* indicated he interviewed Appellee and found that

"[s]ome of the child's mannerisms also place him in harms way due to his lack of perception of danger. [Appellee] has explained that she often has to stop the child from ramming his head into walls and jumping of [sic] the couch and other objects in the home. The child does not perceive pain in a normal wa[y] as well. Consequently, when he suffers injury it may not be discovered until bruising and other signs are prevalent."

The guardian *ad litem's* report further indicated that it is Appellee's belief that Appellant is unable to properly care for L.S. Specifically, the report provided that Appellee believes Appellant does not understand L.S.'s lack of fear regarding injury; that Appellant "does not know how to watch L.S."; that "L.S. gets upset and it is difficult to calm [him] down"; that Appellant "will not admit that the child is special needs" [12]; that Appellant "gives the child soda even though it is bad or [sic] the child's kidney and liver"; and that "Appellant has never been involved in the child's life."

---

10. The August 13, 2009, from the Children's Therapy Clinic's Executive Director also indicated that enclosed therewith were copies of L.S.'s "therapy notes, treatment plan and evaluation." However, those enclosures were not made a part of the record before this Court.

11. *See* W.Va.Code § 48–9–401(a) (2001) (2009 Repl.Vol.)

12. According to the guardian *ad litem's* report, L.S. "has brain damage, cerebral palsy, R.O.P.

[retinopathy of prematurity], and is legally blind having no peripheral vision. Since his birth, the child has had three eye surgeries and will likely need further surgeries in the future." (Footnote omitted) The guardian *ad litem's* report does not provide any additional information regarding the degree of L.S.'s disabilities or his limitations as a result thereof. The absence of such information in the guardian *ad litem's* report is discussed in more detail later in this opinion.

The guardian *ad litem's* report also stated that he interviewed Appellant who, for his part, "is aware that the child is special needs and believes he has the ability to care for the child in the same manner that [Appellee] has since the child's birth."

Ultimately, the guardian *ad litem* recommended that

> "the Court take no action until [Appellant] has presented all appropriate documentation of his compliance with previous orders of this Court. Once the documentation is provided, the Guardian would recommend that [Appellant] be given greater latitude in raising his son including overnight visitation.... If possible, day visits to the home would be appropriate with the mother attending these visits as well. Thereafter, assuming all goes well, [Appellant] can have day visitation in his home alone with the child. As the matter progresses, [Appellant] can enjoy one overnight visit, every other weekend with the child. Thereafter, assuming a steady and productive transition, the child will then move into overnight visitation every other weekend with his father."

Notwithstanding the entry of its September 1, 2009, order finding Appellant had met the statutory requirements warranting a modification of the parenting plan, the family court denied Appellant's request to modify following a hearing on October 7, 2009. According to the November 9, 2009, order, the family court heard the testimony of both parties and the guardian *ad litem,* and considered the guardian *ad litem's* report. No transcript of the hearing was filed with this Court and the family court made no findings or conclusions regarding the testimony taken.[13] However, in this appeal, Appellant contends that during the course of the hearing, he testified as to what he learned at L.S.'s

various therapy sessions and that, when his counsel asked the family court judge what Appellant needed to do in order to get the requested overnight visitation with L.S., the judge replied that he did not know. The court's order concluded only that Appellant failed to provide either the court or the guardian *ad litem* "with written documentation from professional service providers for the benefit of said infant child that in fact the [Appellant] has successfully completed the Ordered therapy/counseling sessions."

On appeal, the Circuit Court of Kanawha County affirmed and concluded the family court order was not clearly erroneous. The circuit court found that Appellant failed to show he "'successfully completed' the ordered therapy/counseling sessions." The court further found that the letters from service providers Appellant provided do not address whether he "'successfully' completed the sessions" nor do they "address the substance of the sessions or if [Appellant] actively participated."

It is from the circuit court's January 25, 2010, order that Appellant now appeals.

## II. Standard of Review

■ Our standard of review of the circuit court's order is well settled:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of the law to the facts under an abuse of discretion standard. We review questions of law *de novo.* Syllabus, *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004).

**13.** We note that at or about the time of the October 7, 2009, hearing, correspondence dated July 2, 2009, from L.S.'s speech therapist, Colleen Herald, to Appellant regarding L.S.'s speech issues, and correspondence dated June 28, 2009, from Amie Smith, L.S.'s teacher from the West Virginia School for the Blind, to Appellant regarding L.S.'s vision issues, were filed with the family court. In each correspondence, L.S.'s "great progress" in the areas of speech and vision was noted. Ms. Herald and Ms. Smith also described what they were working on with L.S. and offered recommendations to Appellant as to how he can help L.S. to further develop his speech and vision. Although these documents were filed with the family court prior to entry of its November 9, 2009, order denying Appellant's petition to modify the parenting plan, it is unclear from the court's order whether it reviewed or considered them. It is also unclear for what purpose this evidence was offered.

Syl. Pt. 1, *Storrie v. Simmons*, 225 W.Va. 317, 319, 693 S.E.2d 70, 72 (2010). With this standard in mind, we now address the Appellant's argument.

### III. Discussion

At issue is the family court's order denying Appellant's most recent request to modify the parties' parenting plan. Appellant contends that the family court's November 9, 2009, order—and indeed, its previous orders denying Appellant's modification requests— were vague and lacked specificity as to the requirements necessary for Appellant to achieve the requested overnight visitation with his son.[14] As a result, Appellant argues, his constitutional right to due process has been violated.

 In syllabus point three of *Turley v. Keesee*, 218 W.Va. 231–32, 624 S.E.2d 578–79 (2005), this Court reiterated that due process principles protect certain fundamental rights of a parent:

> 'The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children.' Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W.Va. 750, 591 S.E.2d 308 (2003).

 With regard to an unwed biological father's rights under the constitution, we have held that

> [a]lthough an unwed father's biological link to his child does not, in and of itself, guarantee him a constitutional stake in his relationship with that child, such a link combined with a substantial parent-child relationship will do so. When an unwed

father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his interest in personal contact with his child acquires substantial protection under the Due Process Clause in Section 10 of Article III of the West Virginia Constitution.

Syl. Pt. 2, *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 626, 474 S.E.2d 554, 556 (1996). *See Id.*, 196 W.Va. at 632, 474 S.E.2d at 562 (opining that the strength of a parent-child bond "derives from the parent's personal and emotional investment and the relationship that develops from that investment. The 'liberty' of the Due Process Clause is grounded in protecting those concerns, such as parenting, that are vital to an individual's self-fulfillment[.]").[15] See *also In re Jeffries*, 204 W.Va. 360, 366, 512 S.E.2d 873, 879 (1998) ("if an unwed father demonstrates a commitment to the responsibilities of parenthood, then the unwed father has a right to, at a minimum, establish a parent-child relationship with a child"); Syl. Pt. 4, *Kessel v. Leavitt*, 204 W.Va. 95, 108, 511 S.E.2d 720, 733 (1998) (holding that "both unwed biological parents have a right to establish a parent-child relationship" and that the father "must, upon learning of the existence of his child, demonstrate his commitment to assume the responsibilities of parenthood by coming forward to participate in the care, rearing, and support of his newborn child and by commencing to establish a meaningful parent-child relationship with his child").

 It is clear, however, that superior to a parent's natural rights in this regard "is the overriding consideration of the child's best interests." *Kessel*, 204 W.Va. at 174, 511 S.E.2d at 799. *See In re Jeffries*, 204

---

14. Additionally, Appellant contends that while his visitation with L.S. is dictated by court-imposed restrictions, Appellee's family members and sometime live-in boyfriend are not subject to the same restrictions because they are permitted to spend unsupervised time with L.S. without being required to attend L.S.'s therapy and counseling sessions. We appreciate Appellant's position in this regard. However, we must note that there is no evidence in the record before us indicating that, in fact, L.S. spends unsupervised time with Appellee's family members or her boyfriend.

15. The facts in *Roy Allen S.* involved whether a putative biological father of a child born during a valid marriage between the mother and another man may raise the issue of paternity. Though the facts of the present case are vastly different, this Court's recognition in *Roy Allen S.* of the importance of a biological parent's relationship with his or her child, and the constitutional protection afforded thereto, is no less applicable.

W.Va. at 366, 512 S.E.2d at 879. As we held in syllabus point five of *Carter v. Carter*, 196 W.Va. 239, 241, 470 S.E.2d 193, 195 (1996), "[i]n visitation as well as custody matters, we have traditionally held paramount the best interests of the child." *See* Syl. Pt. 3, *State ex rel. George B.W. v. Kaufman*, 199 W.Va. 269, 271, 483 S.E.2d 852, 854 (1997). Therefore, "[c]ases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." Syl. Pt. 7, *Matter of Brian D.*, 194 W.Va. 623, 625, 461 S.E.2d 129, 131 (1995). *See In re Stephen Tyler R.*, 213 W.Va. 725, 743, 584 S.E.2d 581, 598 (2003).

Our determination of whether Appellant's constitutional rights were violated must begin with what we perceive to be a glaring deficiency in the record and orders of the family court denying Appellant's petitions to modify the parenting plan. It is apparent that, as a result of his premature birth, L.S. suffers from physical and neurological disabilities which require therapy and counseling from various professional care providers. However, noticeably absent from the family court's orders is any suggestion that it considered objective evidence from a treating physician or physical, vision or occupational therapist regarding the degree of L.S.'s disabilities and his specific needs and limitations resulting therefrom. We note that there is simply nothing in the record describing what is exactly involved in the care of L.S. on a daily basis.[16] In our view, such evidence should be critical to a family court charged with determining whether a noncustodial biological parent is able to safely and properly care for his or her special needs child and to what extent such parent should be ordered to attend the child's professional care therapy and/or counseling sessions before overnight visitation will be awarded.

We recognize that the family court appointed a guardian *ad litem* to represent the best interests of L.S. *See* W.Va.Code § 48–9–302(a) (1999) (2009 Repl.Vol.)[17]; West Virginia Trial Court Rule 21; and Rule 47 of the Rules of Practice and Procedure for Family Court. Indeed, "[a] guardian ad litem shall make a full and independent investigation of the facts involved in the proceeding and make recommendations to the court by testimony or in writing, unless otherwise ordered by the court." West Virginia Trial Court Rule 21.03. *See In re Carol B.*, 209 W.Va. 658, 668 n. 6, 550 S.E.2d 636, 646 n. 6 (2001). As previously stated, the family court directed the guardian *ad litem, inter alia,* to interview the parties and the child; to "contact and obtain any and all pertinent medical/mental treatment records of the parties and the minor child"; and to determine the parties' fitness and assess the suitability of their home environments. In our view, a guardian *ad litem's* full and independent investigation into this case would have, at a minimum, included making contact with L.S., the subject of these proceedings, and, if appropriate, interviewing him. However, there is nothing in his report indicating that the guardian *ad litem* met or otherwise had any personal contact with L.S., as required by the family court order appointing him. Similarly, a full and independent investigation would have also included, at the very least, a review of L.S.'s medical treatment records, including treatment records from his health care providers and from the vision, speech, occupational and/or physical therapists who have provided services to L.S. Again, although the family court ordered the guardian *ad litem* to do so, there is nothing in his report suggesting that the guardian *ad litem* contacted L.S.'s professional care providers at Birth to Three, Children's Therapy Clinic, Professional Therapy Services, Inc. or any

---

**16.** As indicated above, at or about the time of the October 7, 2009, hearing, the Appellant filed with the family court correspondence he received from L.S.'s speech therapist and vision teacher, which offered a glimpse into some of L.S.'s vision and speech issues. However, this evidence did not fully describe the degree of L.S.'s disabilities or his specific limitations and needs. In any event, the November 9, 2009, order denying Appellant's petition to modify the parenting plan

does not indicate whether this evidence had any impact on the court's ruling.

**17.** W.Va.Code § 48–9–302(a) provides as follows:

In its discretion, the court may appoint a guardian ad litem to represent the child's best interests. The court shall specify the terms of the appointment including the guardian's role, duties and scope of authority.

other professional service provider before making his evaluation and recommendation. Such information would have gone a long way in explaining the degree of L.S.'s disabilities, the extent of his limitations, and what is involved in properly caring for him from day to day. Finally, even though the court ordered the guardian *ad litem* to assess the suitability of the parties' "home environments," the guardian *ad litem's* report does not indicate that the guardian *ad litem* personally visited either of their respective homes.[18] As the foregoing discussion illustrates, the guardian *ad litem* failed to make a full and independent investigation into the facts of this case, and failed to adequately represent the best interests of L.S.[19]

It is this Court's belief that guardians *ad litem* appointed to represent the best interests of minor children in family court cases should be given better direction as to the duties involved in making a full and independent investigation of the facts, *see* West Virginia Trial Court Rule 21.03, so that such children are adequately represented. Accordingly, by this opinion, we are directing the Division of Family Court Services of the West Virginia Supreme Court of Appeals to draft and submit to this Court for approval comprehensive guidelines that can be followed by guardians *ad litem* appointed in such cases to more fully ensure the best interests of the children for whom they are appointed are effectively represented.

■ We now address the merits of Appellant's appeal, which necessarily turns on the substantive deficiencies of the guardian *ad litem's* report, the court's orders and the record. From our reading of the record, three months after the birth of L.S., Appellee

filed a complaint to establish paternity and for child support against Appellant. In a timely response, Appellant admitted his paternity and asserted his custodial rights. Since that time, Appellant has filed one request to modify the parenting plan after another, seeking more meaningful (and unsupervised) parenting time with his son. Out of an abundance of caution, but without any objective evidence regarding the degree of L.S.'s disabilities and limitations, the family court ordered Appellant to participate in L.S.'s various professional therapy and counseling sessions before unsupervised overnight visitation would be awarded. In an order entered October 1, 2007, the family court ordered Appellant to "participate in as many therapy sessions as possible" and that, "[f]ollowing three (3) months of the [Appellant's] participation in the therapy sessions as set forth above" a licensed social worker with Birth to Three shall inspect Appellant's home to assure it is suitable for L.S. Accordingly, a favorable Social Work Assessment was completed and filed with the court, as was a letter from Birth to Three indicating Appellant participated in six therapy/intervention sessions with L.S. and Appellee, and in L.S.'s annual treatment planning meeting, and further indicating he attended two out of six individual home visits for "service coordination needs."

By order entered February 23, 2009, the family court denied Appellant's request to modify the parenting plan because Appellant failed to attend "the requisite therapy sessions." The court found Appellant "is in need of additional therapy/counseling sessions with a professional provider thereof" and ordered that a subsequent petition to

---

**18.** In a letter to this Court dated January 28, 2011, the guardian *ad litem* stated that he "attempted a drop-in visit to the mother's home to investigate the status of the child's living conditions[.]"

**19.** In syllabus point five of *Jeffrey R.L.*, in which we adopted guidelines for guardians *ad litem* in abuse and neglect proceedings, we made clear that such guidelines encompassed, *inter alia*, the basic principles set forth in Rules 1.1 and 1.3 of the Rules of Professional Conduct. 190 W.Va. at 26, 435 S.E.2d at 164. Under Rule 1.1, "[a] lawyer shall provide competent representation to a client. Competent representation requires the

legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Though *Jeffrey R.L.* involved an abuse and neglect proceeding, the foregoing is instructive in any case in which a guardian *ad litem* is appointed to represent the interests of minor children. Indeed, by this opinion, this Court is directing that comparable guidelines for guardians ad litem of minor children in family court cases be drafted to ensure that the interests of such children are adequately represented. *See* discussion infra.

modify could be filed after Appellant has "successfully completed the appropriate number" of therapy sessions. However, the "appropriate number" of sessions was in no way enumerated by the court. Moreover, other than finding that Appellant's attendance at L.S.'s therapy sessions were "sporadic" due to Appellant's work schedule, the order did not set forth what evidence it relied upon to determine that Appellant needed "additional therapy/counseling sessions." Because there is nothing in the court's order and only limited information in the record describing the degree of L.S.'s disabilities and his needs and limitations resulting therefrom, it is not surprising that the family court's order makes no finding that Appellant is unable to properly care for his son.[20]

When Appellant filed his most recent petition for modification on September 1, 2009, he attached documentation from the West Virginia School for the Blind, Children's Therapy Clinic, and Professional Therapy Services, indicating he attended various therapy sessions with L.S. The family court initially granted the modification request because Appellant had "met the statutory requirements of a significant change of circumstances necessary to warrant a modification[.]" However, the family court later changed course and ordered that the petition to modify be denied. According to the November 9, 2009, order denying the petition, the family court heard the testimony of both parties and the guardian *ad litem,* and considered the guardian *ad litem's* report and recommendation. As indicated above, neither the guardian *ad litem's* report nor the court's order included any objective evidence, medical or otherwise, about L.S.'s specific disabilities, limitations and daily needs. There is no hearing transcript in the record on appeal and the court's findings were minimal at best. In denying the modification request, the court found simply that Appellant failed to provide written documentation that he had "successfully completed the Ordered therapy/counseling sessions."

Without reservation, this Court subscribes to the notion that Appellant must be knowledgeable in how to properly manage L.S.'s needs, whatever they may be, so that L.S.'s safety is uncompromised while in his father's care. However, given the lack of sufficient objective evidence regarding what exactly L.S.'s needs and limitations are and given Appellant's efforts to comply with the family court's orders, this Court is of the opinion that such orders were so unclear as to what was precisely required of him, that the requested overnight visitation could never be achieved. To reach any other conclusion would infringe upon Appellant's constitutional right to due process. *See* Syl. Pt. 3, *Turley, supra;* Syl. Pt. 2, *Roy Allen S., supra.* We therefore reverse the order of the circuit court, which affirmed the family court's November 9, 2009, order denying Appellant's request for modification, and remand this matter for further proceedings. On remand, we direct that the family court shall elicit and consider objective evidence from a treating medical provider or other treating professional care provider such as a physical, vision, occupational or speech therapist regarding the precise needs of L.S. Such evidence may be elicited through the guardian *ad litem's* report. Additionally, we direct that the guardian *ad litem* shall be required to make personal contact with L.S. and include any observations and information resulting therefrom in his report and recommendation to the family court. We further direct that whatever requirements, if any, are then deemed necessary for Appellant to be awarded expanded visitation with his son—including the requested overnight visitation—shall be specifically outlined by the family court in an appropriate court order. Finally, it appears that it is Appellant's desire to form a close filial bond with his son, while it is Appellee's apparent desire to ensure that L.S. is safe and well cared for while

---

20. Indeed, Appellant argues that neither the Appellee nor the family court can point to any evidence (other than Appellee's personal opinion) suggesting that Appellant is unable to properly care for L.S. To the contrary, Appellant avers that his son's disabilities would not preclude him from having more visitation or from spending time at Appellant's home. We note that during oral argument, Appellee represented to this Court that, more recently, she has permitted Appellant to take L.S. for unsupervised visits for approximately five hours per week.

under the supervision of his father. We remind the parties that their objectives are by no means mutually exclusive, but rather, are clearly consistent with each other and, most importantly, with serving the best interests of L.S. Thus, we suggest to the family court that, if appropriate, it should consider the option of ordering family counseling to help facilitate a viable visitation plan.[21]

### IV. Conclusion

Based upon the foregoing, the order of the circuit court entered January 26, 2010, is hereby reversed, and this matter is remanded to the Circuit Court of Kanawha County with directions to enter an order remanding this case to the Family Court of Kanawha County for further proceedings consistent with this opinion.

Reversed and Remanded, with directions

---

21. The foregoing requirements are to be ordered in addition to any and all other requirements the family court may order in this case.